## THE STATE ex rel. FEDERAL LEAD COMPANY v. E. M. DEARING, Judge.

### In Banc, June 10, 1912.

1. **PROHIBITION: Motion for Judgment on Pleadings: Facts Assumed.** Where relator, after respondent has made return to the writ of prohibition, files a motion for judgment on the pleadings, the well pleaded facts of the return stand as the facts of the case.

2. ———: **Jurisdiction: Defective Service: Motion Still Pending.** If the circuit court otherwise has jurisdiction of the

cause, it has jurisdiction to determine the sufficiency of the service of the summons upon a defendant; and the writ of prohibition will not go on behalf of such defendant on the ground alone that a motion challenging the sufficiency of the service and the jurisdiction of the circuit court because of such defective service is still pending.

3. ————: ————: **Foreign Corporation: Several Defendants: Separable Controversies: Suppression of Nuisance: Removal to Federal Court.** An injunction against several defendants to prohibit them from polluting the waters of a stream bordering plaintiff's lands and from discharging into said stream certain named substances from their mines and mills, is not a separable controversy. A suit for damages would be separable; but the production of the nuisance, the result of the combined acts which produce the nuisance and cause the pollution of the waters, in which all the defendants co-operate, in equity constitutes but one cause of action. Therefore, one of the defendants, which is a foreign corporation, is not entitled to remove the case to the Federal court on the ground that the cause of action as to it is separable from the injury done by the others; and, hence, the circuit court does not lose jurisdiction to try the case upon the filing by said defendant of a motion and bond for the removal of the case as to it to the Federal court.

## Prohibition.

WRIT DENIED.

*Seddon & Holland* and *Edward A. Rozier* for relator.

(1) Where an action is brought in a State court in which there is a controversy which is wholly between a resident of Missouri and a non-resident of Missouri, the latter may remove the suit into the district court of the United States for the proper district. New Federal Judicial Code, 1912. (2) Where several parties cast debris into a stream a separate and distinct tort is committed by each and no joint tort is committed by them. R. & C. Co. v. Richards, 57 Pa. St. Ct. 142; Selleck v. Hall, 47 Conn. 260; Bonte v. Postell, 51 L. R. A. 187; Gallagher v. Kemmerer, 144 Pa. St. 509; Chipman v. Palmer, 77 N. Y. 51. (3) Where a plain-

tiff institutes suit in a State court against several defendants to enjoin the commission of separate and distinct torts by each, there is a separate and distinct controversy between the plaintiff and each of the defendants in such suit and any such defendant, if a nonresident of Missouri, may remove the cause to the Federal court. Calderhead v. Downing, 103 Fed. 27; Barney v. Latham, 103 U. S. 205; Railroad Cases, 115 U. S. 22; Geer, v. Mathieson, 190 U. S. 428; Comm. Co. v. Alaska Co., 148 Fed. 308; Railroad v. Railroad, 141 Fed. 578; Railroad v. C. & L. Co., 152 Fed. 824; Jackson v. Railroad, 178 Fed. 432.

*Clyde Williams* and *Byrns & Bean* for respondent.

(1) Prohibition, being an extraordinary remedy, is only granted in cases of necessity, therefore the existence of another adequate ordinary remedy or of a more appropriate extraordinary remedy, will make it the duty of the court to deny the writ. 2 Spelling on Injunctions and Other Extraordinary Remedies (2 Ed.), par. 1727, p. 1486. Relator had an adequate remedy by appeal to review the action of the circuit court in denying its petition to remove the cause to the United States district court. State ex rel. v. Mosman, 231 Mo. 474; State ex rel. v. Johnston, 137 S. W. 595. Under the Act of Congress providing for the removal of causes from the State courts to the United States Court, relator had a more appropriate extraordinary remedy than prohibition, namely, *certiorari.* Therefore, prohibition wil not lie in this case. 2 Spelling on Injunctions and Other Extraordinary Remedies, (2 Ed.), par. 1736, p. 1495; 23 Am. and Eng. Ency. Law (2 Ed.), 228, par. 53, note 5; Railroad v. McCabe, 213 U. S. 207. (2) The question whether the suit by Steinmetz against the Federal Lead Company (relator herein) and other defendants, who are residents

of this State, is as to said Federal Lead Company and Steinmetz, a controversy wholly between citizens of different States, is to be determined not from the allegations in relator's petition for removal of the cause, but from the allegations in the petition of Steinmetz alone. Plaintiff Steinmetz had the right to elect his own method of attack, and the case as made by his petition is to determine the separable character of the controversy for the purpose of deciding the right of removal. Railroad v. Ide, 114 U. S. 52; Railroad v. Thompson, 200 U. S. 217. (3) The circuit court did not lose jurisdiction of the case of Steinmetz against relator and other defendants because relator filed in said court a petition and bond for the removal of said case to the United States district court, unless the case was one which, under the Act of Congress, relator was entitled to remove to said court. Gregory v. Hartley, 113 U. S. 742; Stone v. South Carolina, 117 U. S. 430. The circuit court of Jefferson county had jurisdiction to decide whether or not the cause of Steinmetz against relator and other defendants was within the terms of the Act of Congress providing for the removal of causes and, exercising that jurisdiction, refused to remove the cause, and even though said judgment were erroneous, relator has an adequate remedy by appeal or by writ of *certiorari*, and prohibition will not lie. (4) The case stated in the petition filed by Steinmetz does not make a separable controversy as to relator within the terms of the Act of Congress providing for the removal of causes, and, therefore, the circuit court of Jefferson county has jurisdiction and prohibition should be denied in this case. Miller v. Clifford, 5 L. R. A. (N. S.) 49; Warren v. Parkhurst, 6 L. R. A. (N. S.) 1149. (5) The authorities cited and relied upon by relator are actions for damages caused by persons acting independently, where it is held that each is liable only for his own act and not for that of any other who may

contribute to the injury, while the case in hand is an injunction suit, the object of which is to do away with the nuisance and restore the stream to its ancient purity. In the suit for damages the measure of liability is ascertained by the nature and extent of the acts of each contributing to the injury, while in the injunction suit it is only required that each person contributing in any way to the injury refrain therefrom. Lockwood Co. v. Lawrence, 77 Me. 297; Warren v. Parkhurst, 6 L. R. A (N. S.) 1149; Woodruff v. Mining Co., 16 Fed. 25; Blaisdell v. Stephens, 14 Nev. 22; Chipman v. Palmer, 77 N. Y. 51; Hillman v. Newington, 57 Cal. 56.

GRAVES, J.—Relator seeks to have respondent, as judge of the circuit court of Jefferson county, prohibited from further proceeding in a case wherein one Steinmetz is plaintiff and this relator and some four other mining companies are defendants.

Steinmetz, who is the owner of land or lands bordering upon Big River, sues to enjoin relator and the other defendants from polluting the waters of such running stream, which it is alleged they do by discharging into said stream certain named substances from their mines and mills, all to the irreparable damage of said plaintiff and his lands, as well as to divers other persons and their lands. The details of this petition are immaterial, but such is the general purport.

The relator is a non-resident corporation, but licensed to do business in this State. In due time the relator herein petitioned the said circuit court for a removal of said cause to the district court of the United States for the Eastern Division of the Eastern District of Missouri, on the ground that plaintiff's petition stated a separable controversy wholly between said plaintiff in that suit and this relator as defendant in that suit, which could be separately and wholly de-

termined as between the two parties aforesaid, one of which parties, the plaintiff, was a citizen of Missouri, and the other, this relator, a citizen of Delaware.

Respondent refused to grant and make an order of removal in compliance with the prayer of relator's petition therefor. Relator in his petition for the writ of prohibition further challenges the jurisdiction of the respondent, because of alleged defective and void service of the summons. This court granted a preliminary rule in prohibition, to which respondent has filed his return, and relator thereupon filed a motion for judgment on the pleadings. In such case the well pleaded facts of the return stand as the facts of the case. The return admits many of the charges in relator's petition and specifically answers as to others. The further facts can be stated best with the discussion of the points made, which are as above indicated.

I. The second ground urged in the petition for the writ of prohibition is not urged in the briefs filed upon the hearing. If it was urged it would be untenable. As stated above the second ground charged in the petition was that there was a defective service upon relator in the circuit court suit. After the circuit court refused a removal order the relator by motion duly challenged the jurisdiction of the circuit court upon the ground of defective service, and this motion was pending at the date of our preliminary rule. That the circuit court of Jefferson county had the right to pass upon that motion as to its jurisdiction goes without question, unless its jurisdiction of the cause had been dislodged by the application and bond for removal to the Federal court. If, in other words, the court was rightfully possessed of the cause after overruling the application for removal, it certainly had the power to pass upon the question of its jurisdiction as raised by the motion now pending before it.

Respondent by his return pleads the pending of that motion and his right to pass upon the jurisdiction of his court, in so far as it attacked by the motion, and in this we think respondent is correct. Respondent, however, further shows all the facts as to the service of the five defendants, giving the return of the officer as to each defendant. From these it appears that all of the defendants were served on the 7th day of December, 1911. One of the defendants was served in Jefferson county and the other four in St. Francois county. We shall not pass upon the sufficiency of this service for the reason that if respondent's court is otherwise rightfully possessed of the cause, he has a right to pass upon this motion to the jurisdiction. The motion being yet before him, we shall not prejudge the matter for him. The real question is the one first raised by the petition and this we take next.

II.  Nor do we think there is substance in the contention that the petition shows upon its face that the action in the circuit court is necessarily a separable controversy between citizens of different States. It must not be overlooked that this is not an action for damages, but an injunctive action to abate a nuisance and to restore the stream to its natural condition. It does appear from the petition that whatever was done by the several defendants toward polluting the stream was done independently. In other words, each defendant has its own separate milling plant, and the refuse from them is placed into the stream by the several defendants in the ordinary and usual manner of doing their respective work. One defendant had nothing to do with the work and doings of the other. But on the other hand the petition charges that the combined wrongful doings of all defendants have produced the present condition of the river, and have therefore produced the nuisance sought to be abated.

To our mind counsel for respondent well state the law as to what is a separable controversy under the laws of the United States, when they say: ''The rule as to joint liability in an action for damages caused by the pollution of a stream by separate acts of different parties is entirely different from an action, as in this case, by injunction to restrain all parties who by their separate acts pollute a stream and create a nuisance. There is a distinction between suits for injunction and actions for damages in regard to the joinder of parties contributing toward an injury.''

There is a marked distinction between actions in equity and actions at law in cases of this character. If the plaintiff Steinmetz had sued these five defendants for damages resulting to his property by reason of their alleged separate acts, the cause of action stated would be a separable cause of action, because each defendant would only be liable for such proportionate part of the whole damage as it had done by reason of its individual wrongful act. Better stated, each defendant would only be liable to plaintiff for such damage as its individual wrongful acts had occasioned. But in equity where the purpose of the action is to abate the nuisance which produces the injury and thereby restore the stream, the rule as to joinder of parties is different. In such cases each party contributing in any way to produce the pollution of the stream is a proper party defendant, and no separable cause of action is stated.

In a note to the case of Warren v. Parkhurst, 6 L. R. A. (N. S.) 1149, the learned annotator has clearly drawn the distinction in this language: ''The opinion in the above case brings out very clearly the distinction between suits for injunction and those for damages, with respect to the joinder of parties contributing toward an injury, and the cases directly in point are fully set out in the opinion. The cases in which a joint recovery of damages for the pollution

was denied may, however, deserve a little notice by way of emphasis. In Martinowsky v. Hannibal, 35 Mo. App. 70, it was held that persons who deposit filth in a stream at different points cannot be made joint defendants in a suit for damages, but each must be sued separately, and recovery can be had against him for only his proportion of the total injury. So, persons who, independently and without co-operation or concert of action, turn surface water into a drain to the injury of a lower proprietor, cannot be made jointly liable as joint tortfeasors. [Bonte v. Postel, 109 Ky. 64, 51 L. R. A. 187.] So, owners of property, who petition a city for the construction of a sewer and agree to use it, are not jointly liable with the city for damages caused by unskilful and negligent construction of the sewer, so that it pollutes a water course to the injury of a lower riparian owner. [Carmichael v. Texarkana, 58 L. R. A. 911; affirming 94 Fed. 561.] And a similar result was reached, although upon different grounds, in Thompson v. Reasoner, 122 Ind. 454, 7 L. R. A. 495.

"The ground of the distinction between the two classes of actions is that in the injunction suit the object is to do away with the nuisance and restore the stream to its ancient purity. To accomplish this, all that is nececssary is to require the person contributing to the injury to refrain therefrom. This can be done in one action, and it is unnecessary to maintain separate actions against each contributing party. On the other hand, as shown in 2 Farnham, Waters, 1716, a person polluting a water course is liable in damage only for his own act, and not for that of any others who may contribute to the injury. If others have contributed, his deposit must be separated by means of the best proof the nature of the case affords, and his liability ascertained accordingly. [Seely v. Alden, 61 Pa. 302, 100 Am. Dec. 642; Chipman v. Palmer, 77

N. Y. 51, 33 Am. Rep. 566, affirming 9 Hun, 517.] This separation can be accomplished without a confusion of issues only by an action in which the individual is the sole defendant. Therefore such action must be brought against individuals, and not against the several defendants jointly.''

In the Warren case, supra, the New York court said:

''Considered as a bill in equity to restrain the further pollution of the waters of Cayadutta creek by the defendants, I think that the complaint states a cause of action, and is not objectionable on the ground multifariousness. Whether it would be good if the plaintiff sought only to recover damages at law, it is not necessary now to decide. The principles of equity jurisprudence applicable to the determination of this appeal have never been more clearly stated by any tribunal in the United States, or more thoroughly or ably discussed, than in the opinion of the Supreme Judicial Court of Maine in the case of Lockwood Co. v. Lawrence, 77 Me. 297, 52 Am. Rep. 763. The nuisance which was the subject of complaint in that case arose out of the deposit in a river of the waste from sawmills by several owners and proprietors of such sawmills acting independently of one another. The refuse material and debris arising from the operation of their separate sawmills was carried down the river and commingled into one indistinguishable mass before it reached the premises of the complainant, where it was deposited in such quantities as to constitute a nuisance. Objection was made to the joinder of the several defendants in the bill on the ground that the cause of action was distinct and several as against each of them; it being expressly alleged in the bill that each was independently working his own sawmill without any conspiracy or preconcert of undertaking or action with the others. This objection was held to be untenable, inasmuch as there was co-operation in

fact in the production of the nuisance. 'The acts of the respondents,' said FOSTER, J., 'may be independent and several, but the result of these several acts combines to produce whatever damage or injury these complainants suffer, and in equity constitutes but one cause of action.'

"Another leading case in which the same rule was applied is Draper v. Brown, 115 Wis. 361, which was a suit in equity against a number of defendants to restrain the commission of acts resulting in a nuisance and consequent injury of the property of the plaintiff. The gravamen of the action was the unlawful lowering of the waters of the lake below their accustomed level, the plaintiff alleging that some of the defendants who owned a mill dam at the outlet of the lake drew an excessive quantity of water therefrom; that other defendants withheld the natural flow of a river running into the lake; and that still another obstructed the flow of the river, thereby diminishing the quantity of the water which reached the lake. It was contended that two or more causes of action were improperly united in the complaint, but the court held that the complaint stated but one cause of action in which all the defendants were interested, inasmuch as, though all the defendants acted independently and without concert, their acts united and concurred in producing the injurious result. The fact that the parties were acting without concert was declared to be no defense to an equitable action for injunctive relief if their acts contributed in some appreciable degree to produce the conditions sought to be repressed.

"To the same effect is the decision in the Mining Debris Case, 8 Sawy. 628, 16 Fed. 25, which was a bill against a number of hydraulic mining companies in California, severally owning mines at various points on the Yuba river and its affluents, and working them independently of each other. The relief sought was an injunction to restrain the defendants from discharg-

ing the mining debris arising from the operation of their several mines into the streams, it appearing that the debris became mingled therein into an indistinguishable mass and was deposited upon the lands of the complainant so as to constitute a great public and private nuisance. There was a demurrer to the bill on the ground of misjoinder and multifariousness, and it was contended in particular that, inasmuch as each defendant was pursuing its own business severally without any joint intent or a joint action, the cause of action was distinct and several as against each, and that neither the defendants nor the several causes of action could be joined in the same suit. In overruling the demurrer SAWYER, C. J., declared that, after a very careful examination and analysis of the numerous authorities cited in support of the proposition stated, he was entirely satisfied that, under the principles of equity jurisprudence as established in England and in the United States, there was no misjoinder of defendants, and that the bill was not multifarious. Among other things he said: The nuisance is created by the joint action of the debris from the various mines, which is combined, and afterwards flows on together, long before it reaches the lands injured and threatened, and after such combination creates the nuisance complained of. There is therefore a co-operation in fact, if not in intent, of these several defendants in the production of the nuisance. The injury is the joint effect of acts, originally several, but combined before the debris is precipitated upon the lands below and the injury is effected, and in contemplation of equity it constitutes a single cause of action. There is a common interest in the right claimed to discharge debris into the streams. The defendants each and all claim a common, though not a joint, right. The final injury is a single one—a single result of the combined operation of this debris—and all the defendants co-operate in fact in producing it. No damages are sought. Only

equitable relief is demanded by restraining future action—a future contribution by each to the nuisance.''

We quote from this case at length because it discusses other cases bearing upon the question, and puts the doctrine as clearly and distinctly as we could hope to put it. The learned judge in that case also reviews the English cases upon the question. Other cases along the same line may be found cited in respondent's brief herein, but to our mind the distinction is clear.

It may be that the plaintiff Steinmetz could have brought separate actions in equity against each of these defendants, but this would not change the rule. Such would not have been the better practice.

In ''Moon on the Removal of Causes,'' sec. 142, p. 402, it is said: ''There are many causes of action which are, in their nature, joint and several. A plaintiff may sue all the parties liable, or sue any one or more of them, at his election. Where the plaintiff has a right under the law to sue defendants jointly, the defendants cannot obtain an advantage from the fact that he also has a right to sue them separately. If a plaintiff sues two or more persons jointly in such a case, the fact that the plaintiff might have brought several actions against each defendant, instead of one action against them all, does not make the suit embrace *separable controversies.* This rule applies to actions upon joint and several contracts. It applies as well to actions in tort, which are, in their nature, joint and several.'' The italics are ours.

So that if it be granted that Steinmetz could have instituted separate equity suits, yet if he had the right to join the defendants, as we think he did, such defendants gain no advantage as to the question of removal, simply because of the fact that plaintiff could have sued them in equity either singly or jointly.

The cases cited and relied upon by counsel for relator are largely actions at law for damages, and it is well settled in this State as elsewhere that in such

case the defendants should not be joined, and if the petition shows upon its face that the damages were done by the defendants acting independently and separately, and if one of them is a citizen of another State, then there is a separable cause of action, which is removable to the proper Federal court. But those cases are not in point in this case.

Respondent was not in error when he refused to remove the cause. The jurisdiction of the cause is properly in respondent's court. Our preliminary rule in prohibition will therefore be quashed, and the writ of prohibition refused. All concur.